**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re:<br><br>**LAVIE CARE CENTERS, LLC, et al.,**[1]<br><br>Debtors. | Chapter 11<br>Case No. 24-55507-PMB<br>Jointly Administered |
| **RYNIKER CONSULTANTS, LLC,** as the GUC Trustee of the LaVie Care Centers GUC Trust,<br><br>*Plaintiff,*<br>v.<br><br>**JOEL LANDAU, et al.,**<br><br>*Defendants.* | Adv. Proc. No. 26-05140-pmb<br>Honorable Paul M. Baisier |

[1] The last four digits of LaVie Care Centers, LLC's federal tax identification number are 5592. There were 282 Debtors in these Chapter 11 cases, *see* Case Nos. 24-55504 through 24-55787, which the Court ordered jointly administered under the above caption (Docket No. 20) at the Debtors' request (Docket No. 3). All these cases except this lead case are now closed. *See* Docket No. 1206. A complete list of the jointly administered Debtors and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/LaVie. The location of LaVie Care Centers, LLC's corporate headquarters and the Debtors' service address is 1040 Crown Pointe Parkway, Suite 600, Atlanta, GA 30338.

**DEFENDANTS' MOTION TO DISMISS THE ADVERSARY COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

Defendants respectfully move the Court to dismiss the Adversary Complaint [Adv. Docket No. 4 (unredacted) and 34 (redacted)] (collectively, the "Complaint") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012(b). In support, Defendants show the Court as follows.

## I. INTRODUCTION

The Trustee has sued twenty-three individuals, plus twenty John Does, on sixty-five pages of allegations spanning roughly ninety skilled-nursing facilities, five divestiture "tranches," dozens of entities, and six years of conduct reaching back to 2018. The Complaint identifies documents various Defendants purportedly signed and transactions various director slates purportedly approved, but it never supplies the facts that would convert any of those acts into a plausible fiduciary breach by each Defendant. As to every count, the dispositive questions go unanswered: which entity did each Defendant owe a duty to, which transaction breached that duty, and which injury to that entity resulted? Instead, the Complaint pleads allegations against "Defendants" collectively and asks the Court to infer breach from corporate positions and signature—precisely the collective, group pleading the Eleventh Circuit condemns as a shotgun pleading. At a minimum, that requires a defendant- and entity-specific repleader; as currently pled, no count states a claim.

However, the Complaint's problems begin even before the merits. Although the Plan defined and assigned the "D&O Claims," post-confirmation jurisdiction still requires a close nexus to the Plan; the allegation that a recovery would augment the Class 6B pool does not supply it—least of all for the claims sourced from non-debtor FC21, which were never estate property. The Trustee's standing is also limited by its assignment: Section H conveyed only insured, in-capacity claims, capped at policy limits and payable only by insurers, while the Complaint's core theory of intentional self-dealing and personal enrichment, describes conduct outside that grant. To that extent, the Trust was assigned nothing and lacks standing. To the extent the Trustee instead sues "derivatively for the benefit of creditors," the Delaware LLC Act denies creditors derivative standing even in insolvency.

The merits fare no better. Most Defendants merely served on the board of FC Investors XXI, LLC ("FC21"), the non-debtor parent entity, which owed no fiduciary duty to the Debtor subsidiaries; the theory that duties "extended to the Debtors' creditors" upon insolvency misstates Delaware law; the care-based claims founder on the business judgment rule and permitted exculpation; Count III invokes corporate dividend statutes that do not govern LLCs and is time-barred; and Count V concedes it states no independent claim. The oldest claims, the 2018 Conintlo loan and the 2020 and 2021 distributions, were time-barred before the petitions, and the pled tolling doctrines are unavailable or conclusory. The relief theories are deficient,

as well: policy limits and preliminary, portfolio-wide valuations are not entity-specific injury; Delaware does not recognize deepening insolvency; and the assignment's insurer-only recovery cap forecloses punitive damages and disgorgement. Each ground independently supports dismissal.

## II. FACTUAL BACKGROUND

### A. The Corporate Structure and the Parties.

FC21 is a Delaware limited liability company and is not a debtor. (Compl. ¶ 41.)[2] Beneath FC21 sits a chain of 100%-owned, single-member LLCs, which own Debtor LaVie Care Centers, LLC ("LVCC"), a manager-managed Florida LLC whose operating agreement provides that its managers owe fiduciary duties "to the extent such manager could be held liable under applicable law if the Company were a corporation and such Manager were a director." (*Id.*) Below LVCC sit holding companies and the facility-level operating entities—the DivestCo Facility Debtors—that held the skilled-nursing licenses. (Compl. ¶¶ 41-42.)

The Complaint names twenty-three individual Defendants and twenty John Does, alleging that each was, for all or part of the period, "a member of the board of directors of FC21 or a director, officer, or manager of one or more entities underneath FC21." (Compl. ¶ 34.) The FC21 directors served rotating, in some cases

[2] The following factual background is drawn from the Complaint and matters of record subject to judicial notice and is assumed true solely for this Motion.

non-overlapping, tenures. (Compl. ¶¶ 17-34, 120, 136.) Other Defendants were facility-level managers or authorized signatories under a November 2021 Omnibus Consent and are alleged only to have "approved, executed or acquiesced" in transfers. (Compl. ¶¶ 51, 61.)

**B. <u>The Challenged Transactions.</u>**

The Complaint challenges four categories of conduct. First, in August 2018 certain Debtors became borrower and guarantors on a $5 million loan from Conintlo Investments Ltd. that financed a proposed acquisition of a controlling interest in FC21; the loan was satisfied December 15, 2020. (Compl. ¶¶ 92-95, 143.) Second, the Complaint alleges that the Debtors made insider distributions of approximately $2.528 million in 2020 and $751,000 in 2021. (Compl. ¶¶ 136-137.) Third, the Complaint alleges that between 2022 and 2024, in five tranches, the Debtors divested roughly ninety facilities, largely to alleged insiders and related parties, for aggregate cash consideration of $36.4 million against the Trustee's own "preliminary" value estimate of $125 million to $320 million; many transferring DivestCo Facility Debtors were single-purpose entities already in default on their leases. (Compl. ¶¶ 51, 57, 60, 90, 120, 123.) Fourth, the Complaint alleges that the facilities were allegedly understaffed; that shortfalls were reported to and discussed by Defendants at quarterly and monthly meetings and in quality-improvement plans; that Defendants adopted operational-mitigation plans and budgets; and that "[s]taffing at

the facility level was the responsibility of each facility's management team." (Compl. ¶¶ 104-112, 126-131.) The Complaint pleads that "the Debtors" were insolvent "no later than December 31, 2020," citing consolidated accumulated deficits of approximately $925.5 million (2020) and $970.4 million (2021) and a July 21, 2023 going-concern note. (Compl. ¶¶ 47, 116.)

### C. <u>The Plan, the Claims, and the Relief Sought.</u>

The Debtors filed Chapter 11 petitions on June 2 and 3, 2024. (Compl. ¶ 47.) The confirmed Plan (Docket No. 735) established the GUC Trust, to which the "D&O Claims" were assigned as "the primary source of recovery under the Plan for creditors in Class 6B." (Compl. ¶¶ 10, 35.) The Trustee filed the operative redacted Complaint on August 24, 2026. (Adv. Docket No. 4 (unredacted) and 34 (redacted)), alleging: breach of the duties of care and loyalty in the tranche divestitures (Count I); grossly negligent operations (Count II); illegal distributions while insolvent, invoking Delaware and Florida statutes (Count III); self-dealing (Count IV); and alter ego/veil piercing/substantive consolidation, which "does not assert an independent cause of action" (Count V). (Compl. ¶¶ 135, 142, 148.) The Complaint pleads its claims as "estate claims, brought derivatively for the benefit of creditors," alleges that upon insolvency, duties "extended to the Debtors' creditors," seeks "the maximum available insurance policy limits" plus punitive damages and disgorgement, and invokes adverse domination, fraudulent concealment, the

discovery rule, and § 108(a) to toll all limitations periods. (Compl. ¶¶ 9, 116, 160-162 & Prayer.)

## III. LEGAL STANDARD

Subject matter jurisdiction is a threshold question under Rule 12(b)(1); after confirmation, "related to" jurisdiction under 28 U.S.C. § 1334(b) exists only where a matter bears a close nexus to the confirmed plan. Under Rule 12(b)(6), made applicable by Bankruptcy Rule 7012(b), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A fiduciary duty claim requires a duty, breach, and proximately caused damages, pled so that each individual defendant is plausibly liable. *In re Bal Harbour Quarzo, LLC*, 623 B.R. 903, 919 (Bankr. S.D. Fla. 2020).

## IV. ARGUMENT AND CITATION TO AUTHORITY

The Complaint fails at three levels. First, the Court lacks post-confirmation jurisdiction, and the Trustee lacks standing beyond the narrow assignment it received. Second, even if jurisdiction and standing existed, the Complaint does not plead defendant-specific duty, breach, causation, or damages. Third, each individual count fails for independent statutory, limitations, exculpation, and remedial defects. At a minimum, any repleader should require the Trustee to identify, for each Defendant and each claim, the entity to which a duty was owed, the challenged

transaction or omission, the Defendant's alleged role, the facts showing breach, and the entity-specific injury caused.

**A. <u>The Court Lacks Post-Confirmation Jurisdiction, and the Trustee Lacks Standing to Bring the Claims It Has Pled</u>.**

1. <u>The State-Law Claims Lack the Required Close Nexus.</u>

Confirmation narrows a bankruptcy court's "related to" jurisdiction; once a plan is confirmed, jurisdiction survives only for matters bearing a close nexus to the plan. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 164-67 (3d Cir. 2004). In *Resorts*, a post-confirmation litigation trustee sued the trust's accountants, and the Third Circuit found no jurisdiction existed even though recovery would enlarge the trust: the "potential to increase assets of the Litigation Trust and its beneficiaries does not necessarily create a close nexus." *Id.* at 170. Bankruptcy courts in this Circuit agree. *Jeffrey L. Miller Investments* dismissed post-confirmation fraudulent transfer and alter-ego claims for lack of jurisdiction, observing that courts "have consistently rejected the notion that even an increased dividend to creditors is enough to establish the close nexus required," and that a plan's retention of jurisdiction provision cannot supply what § 1334(b) withholds. 624 B.R. 913, 917, 920 (Bankr. M.D. Fla. 2021).

Here, the claims are freestanding state law fiduciary duty claims against non-debtor individuals for pre-petition conduct; adjudicating them will not require the Court to interpret, implement, consummate, execute, or administer the Plan. The Trustee will invoke the Plan's reservation and assignment of the "D&O Claims," but

preserving a claim in a plan is not the same as making its adjudication integral to the Plan's implementation. The Complaint pleads only that a recovery would fund Class 6B distributions (Compl. ¶¶ 10, 35)—the same increased-dividend connection rejected in *Resorts* and *Jeffrey L. Miller Investments*. To the extent the Trustee purports to assert claims belonging to non-debtor FC21, those claims were never the property of any estate, and routing them through the Trust cannot manufacture § 1334 jurisdiction over them. These claims should be dismissed under Rule 12(b)(1).

2. <u>The Complaint Improperly Pleads Creditor Claims.</u>

A trustee or plan-assigned trust "stands in the shoes of the debtor," acquires "no rights or interests greater than those the debtor held," and holds only what was actually assigned. *Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1150 (11th Cir. 2006). Two limits follow. First, claims belonging to creditors are not estate property. *In re Caribbean K Line, Ltd.*, 288 B.R. 908, 914-15 (S.D. Fla. 2002). So, to the extent the Complaint seeks recovery for injuries that are not the Debtors' own—the residents' and patients' personal-injury claims addressed in Section IV.E, and creditors' diminished distributions—those injuries belong to the injured parties, not the estate, and are not the Trustee's to bring.

That any recovery would flow to creditors "through the Plan's distribution mechanics" (Compl. ¶¶ 9-10, 35) does not convert a creditor's or a resident's injury into the Debtors' claim. Second, and independently, the Trustee's standing is

bounded by the assignment it received. Section H conveyed only claims that "are or may be covered claims under a current insurance policy." It limited those claims to conduct by Defendants "solely and specifically in their capacity" as officers, directors, and managers. It also capped any recovery at available policy limits and required the claims to be "pursued only against any applicable insurers." (Plan § H, Assignment of D&O Claims.) An assignee cannot litigate causes of action outside that bounded grant. *Edwards*, 437 F.3d at 1150.

The Complaint's central theory—that the Defendants engineered a deliberate insider transfer scheme and enriched themselves personally through entities they controlled—describes conduct undertaken outside any insured fiduciary capacity and outside the covered-claim grant; to that extent, the Trust was assigned nothing and lacks standing. For each claim it presses, the Trustee must identify the assigning entity, the duty owed to that entity, the injury that entity sustained, and the Section H grant that reaches it. Claims outside the defined grant "are not property of the [trust]" and the trustee "lacks standing to pursue them." *Mukamal v. Bakes*, 383 B.R. 798, 811 (S.D. Fla. 2007).

3. Creditors of the Delaware LLCs Have No Derivative Standing.

For the Delaware entities, a statutory bar independently forecloses the derivative theory: a derivative plaintiff "must be a member or an assignee of a limited liability company interest," 6 Del. C. § 18-1002. *CML V, LLC v. Bax*, 28

A.3d 1037, 1041-45 (Del. 2011), held that limitation exclusive and rejected any insolvency exception—creditors of an insolvent Delaware LLC cannot sue derivatively at all. Insofar as the Trustee sues in the right of creditors, it received no derivative claim to assert; and to the extent it instead sues on claims the Debtors owned and assigned, those claims fail for the reasons in Sections IV.B through IV.K, below.

### B. <u>The Complaint Does Not Connect Each Defendant to a Breach of a Duty Owed to a Particular Entity and Must at Least Be Repled</u>.

The defect infecting every count is the failure to plead defendant-specific conduct. "[L]iability is personal…Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed." *In re Conex Holdings, LLC*, 514 B.R. 405, 414 (Bankr. D. Del. 2014). *Conex* is on point: a trustee's fiduciary-duty suit against officers and directors was dismissed because the trustee "lump[ed] all of the Individual Defendants together" without pleading which transactions any defendant authorized. *Id.* at 414-17; *see also Quashie v. Olympus Am., Inc.*, 315 F. Supp. 3d 1329, 1335 (N.D. Ga. 2018) (complaint must "set forth each defendant's individual actions" and distinguish among them); *Prolow v. Aetna Life Ins. Co.*, 510 F. Supp. 3d 1303, 1310 (S.D. Fla. 2021) (indiscriminately "lump[ing]" distinct defendants together, "without articulating the factual basis for each defendant['s] liability," fails Rule 8).

The Eleventh Circuit condemns the same practice as a shotgun pleading: the fourth *Weiland* category is a complaint "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Such pleadings are "flatly forbidden." *Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (11th Cir. 2021). And a complaint that pleads identical fiduciary counts against multiple individuals, "simply switch[ing] out the Defendants' names," fails to show that "each individual Defendant is plausibly liable." *Silver Crown Invs., LLC v. Team Real Est. Mgmt., LLC*, 349 F. Supp. 3d 1316, 1331 (S.D. Fla. 2018).

The Complaint repeats that error at scale. It identifies board slates by tranche and names the managers who signed particular operations-transfer agreements, but naming a signatory is not pleading a breach. A signature on a board-approved transaction does not, without more, establish that the signatory owed a fiduciary duty to the transferor, had discretion to refuse it, knew the consideration was inadequate, was conflicted, or thereby caused that entity a cognizable loss. The Complaint supplies none of those facts defendant-by-defendant. It instead pleads Counts I and II against twenty and twenty-three Defendants at once and does not even fix each Defendant's role, alleging in the disjunctive that each was "an actual or de facto executive, officer, director, or manager of FC21 or LaVie." (Compl. ¶ 34.) Where a

complaint labels defendants variously "member," "manager," "de facto manager," and "agent" without a coherent explanation of the structure, defendants cannot discern the grounds upon which each claim rests. *Barmapov*, 986 F.3d at 1326.

Here, the control, affiliation, and acquiescence allegations on which liability depends are pled "upon information and belief" without supporting facts (Compl. ¶¶ 52, 61, 152) and are not entitled to a presumption of truth. *United Am. Corp. v. Bitmain, Inc.*, 530 F. Supp. 3d 1241, 1264-65 (S.D. Fla. 2021). The gap is starkest for the facility-level managers and signatories: that a manager signed, or did not object to, a board-approved transaction he was empowered to execute—without facts showing authority to stop it, knowledge of impropriety, or a duty to demand a different outcome—pleads no breach. *Silver Crown*, 349 F. Supp. 3d at 1331. Each count should be dismissed as to every Defendant whose alleged involvement is confined to tenure, title, or signature; at a minimum, the Trustee should be required to replead on a defendant- and entity-specific basis.

### C. <u>**Most Defendants Owed No Fiduciary Duty to the Entities Allegedly Harmed**</u>.

#### 1. <u>FC21's Directors Owed No Duty to the Debtor Subsidiaries or Their Creditors.</u>

The Complaint treats service on the board of FC21, the non-debtor parent, as a source of duties running down the ownership chain. Delaware law forecloses that. "Under settled principles of Delaware law, a parent corporation does not owe

fiduciary duties to its wholly-owned subsidiaries or their creditors." *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 191-92 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007) (TABLE). In fact, *Trenwick* arose in this very posture—a plan litigation trust suing a parent's directors—and was dismissed. If the parent owed the Debtors no duty, its directors, whose duties ran to the parent alone, owed none either. *See Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1208 (Del. Ch. 2010). Insolvency does not change the answer; a parent does not acquire duties to a subsidiary upon the subsidiary's insolvency. *In re Fundamental Long Term Care, Inc.*, 507 B.R. 359, 376 (Bankr. M.D. Fla. 2014) (nursing-home enterprise). The tranche approvals pled are FC21 board approvals (Compl. ¶¶ 34, 120); the Complaint pleads no facts that any FC21 director owed a duty to LVCC or any DivestCo Facility Debtor, and generalized "control" cannot substitute for the entity-specific duty required. Counts I, II, and IV fail as to the FC21-board Defendants for this reason alone.

2. <u>No Duties Ran Directly to Creditors Upon Insolvency.</u>

The allegation that upon insolvency "the Defendants' fiduciary duties extended to the Debtors' creditors" (Compl. ¶ 116) misstates the law. Insolvency shifts who may sue derivatively, not to whom the duty runs. Creditors of an insolvent corporation may not assert direct fiduciary claims against directors; insolvency gives creditors standing to assert derivatively claims belonging to the corporation, and "the

general rule is that directors do not owe creditors duties beyond the relevant contractual terms." *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101-03 (Del. 2007); *see also Mukamal v. Bakes*, 378 F. App'x 890, 900 (11th Cir. 2010). The direct-duty theory should be dismissed under *Gheewalla*, and the remaining derivative framing collapses into the standing defects in Section IV.A.

**D. <u>The Business Judgment Rule and Permitted Exculpation Defeat the Care-Based Claims (Counts I and II)</u>.**

Both governing statutes make fiduciary duties largely a matter of contract. The Delaware LLC Act gives "maximum effect to the principle of freedom of contract" and permits an LLC agreement to restrict or eliminate fiduciary duties and liability, subject only to the implied covenant of good faith and fair dealing. 6 Del. C. § 18-1101(b), (c), (e); *see also Baldwin v. New Wood Res. LLC*, 283 A.3d 1099, 1114 (Del. 2022). In Florida, the statutory duty of care is breached only by "grossly negligent or reckless conduct, willful or intentional misconduct, or a knowing violation of law." Fla. Stat. § 605.04091(2). The Complaint acknowledges that these statutes permit such limitation (Compl. ¶ 118), and to the extent the operative FC21 and LVCC agreements eliminate or exculpate the duty of care, the care claims fail on that basis alone.

Independent of any agreement, the business judgment rule presumes directors "acted on an informed basis, in good faith and in the honest belief that the action

taken was in the best interests of the company," and to overcome that presumption, a plaintiff must plead particularized scienter—that the fiduciary knowingly violated or consciously disregarded a duty. *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 124-25 (Del. Ch. 2009). The pleading must attack the process, not the outcome. *Mukamal*, 378 F. App'x at 902; *Trenwick*, 906 A.2d at 193. Here, the Complaint pleads outcome—that Defendants failed to investigate, value, or market the facilities, measured against the Trustee's own preliminary ranges (Compl. ¶¶ 90, 122-123)—and pleads no particularized facts of bad faith, knowing illegality, or improper personal benefit. "[A]rms-length transactions approved by majority independent boards…are the quintessential transactions subject to the protection of the business judgment rule." *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 173 (Del. Ch. 2006). Florida's care standard is gross negligence, not ordinary negligence, and managers may rely in good faith on management, counsel, and financial data. Fla. Stat. § 605.04091(2), (6). The care-based theories should be dismissed.

**E. <u>Count II Fails Independently: It Pleads No Oversight Claim, and Its Causal Chain to Any Entity Injury Is Conclusory</u>.**

A claim that fiduciaries failed to monitor operations is an oversight claim governed by *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996), "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." It requires particularized facts that fiduciaries either

utterly failed to implement any reporting system or consciously failed to monitor one, and, because it sounds in loyalty, requires bad-faith scienter. *Clingman & Hanger Mgmt. Assocs., LLC v. Knobel*, No. 16-62028-CIV, 2018 WL 2006763, at *9 (S.D. Fla. Jan. 9, 2018).

The Complaint's own allegations defeat both prongs. Staffing shortfalls were repeatedly reported to and discussed by Defendants at quarterly and monthly meetings and in quality-improvement plans (a functioning reporting system), and Defendants took responsive, if allegedly inadequate, action through operational-mitigation plans and budgets. (Compl. ¶¶ 104, 111, 126.) Disagreement with budget judgment is not conscious disregard of a known duty.

Count II's causal chain is also fatally attenuated. The core injuries alleged—the residents' personal-injury and wrongful-death claims—are not the entity's, and a fiduciary claim requires injury to the entity to which the duty was owed. *Mukamal*, 378 F. App'x at 900. The Complaint invokes the reserves, settlements, and lost value those claims generated, but pleads no non-conclusory chain from any Defendants' portfolio-level budget decision to any specific facility's staffing failure to any entity-level loss. Its own allegation that "[s]taffing at the facility level was the responsibility of each facility's management team" (Compl. ¶ 126) breaks the chain it needs. Count II should be dismissed.

### F. **<u>Count III Invokes the Wrong Statutes, Omits the Elements of the Right Ones, and Is Time-Barred</u>.**

Count III grounds itself in the Delaware and Florida corporate dividend statutes, 8 Del. C. §§ 160, 170, 172-174 and Fla. Stat. § 607.06401 (Compl. ¶ 135), but the distributing entities are LLCs those statutes do not reach. *J.E.J. v. S.A.B.*, 416 So. 3d 1186, 1193 (Fla. Dist. Ct. App. 2025) (§ 607.06401 "prohibits distributions that would make a corporation insolvent" and does not govern an LLC). LLC distributions are governed by 6 Del. C. § 18-607, not the corporate provisions cited.

Measured against the correct statutes, Count III pleads none of the required elements: § 18-607(b) reaches only a member who received a distribution and "knew at the time" it violated the statute, and Fla. Stat. § 605.0406(2)-(3) reaches a member or manager who consents to an unlawful distribution, and only for the unlawful excess. Count III instead sues directors for "authorizing or permitting" distributions without identifying which LLC made which distribution, pleads no recipient's knowledge or culpable consent, seeks the full amount, and rests on consolidated insolvency. (Compl. ¶¶ 136-137.) The LLC statutes also carry their own limits—two years in Florida (§ 605.0406(5)) and three in Delaware (§ 18-607(c))—which expired on the 2020 and pre-June-2021 distributions before the June 2024 petitions, and § 108(a) extends only periods still running at the petition date. *In re Phoenix Diversified Inv. Corp.*, 439 B.R. 231, 244 (Bankr. S.D. Fla. 2010). Recasting the

distributions as a common-law fiduciary breach merely duplicates Counts I and II. Count III should be dismissed.

### G. <u>Count IV Pleads No Disqualifying Interest</u>.

A loyalty claim requires that the defendant put a personal interest ahead of the entity's, pled defendant-by-defendant. *Citigroup*, 964 A.2d at 124-25; *Silver Crown*, 349 F. Supp. 3d at 1331. Count IV does neither. It cannot even identify its own Defendants: its heading names seven while the paragraph reciting the duty names a partially different ten. (Compl. ¶ 142.) Its concrete conflict allegations reach only subsets (the Conintlo theory, six Defendants; the $35 million cooperation-fee theory, seven) (Compl. ¶¶ 143-144), and its remaining allegations that "the Defendants in Count IV" failed to disclose interests or recuse are collective and identify no personal financial interest of any particular Defendant in any particular transaction. (Compl. ¶ 145.) As to every Defendant for whom no disqualifying interest is pled, the loyalty theory collapses, at most, into an exculpated duty-of-care claim. Count IV should be dismissed as to each such Defendant.

### H. <u>Count V States No Claim and Cannot Bridge Liability to the Individual Defendants</u>.

Count V concedes it "does not assert an independent cause of action" but nevertheless pleads alter ego, veil piercing, and substantive consolidation. (Compl. ¶ 148.) The concession is correct: Count V does not assert any independent claims and instead rises or falls with Counts I-IV. It also fails on its own terms.

*Veil piercing.* Veil piercing is not an independent claim but a means of enforcing an underlying one. *In re Bal Harbour Quarzo, LLC*, 634 B.R. 827, 835-36 (Bankr. S.D. Fla. 2021). Under Delaware law "[v]eil piercing is a tough thing to plead and a tougher thing to get," reserved for the exceptional case in which the entity is a sham existing for no purpose but fraud; the plaintiff must plead an overall element of injustice beyond the underlying liability, and undercapitalization or insolvency alone is not enough. *PXP Producing Co. LLC v. MitEnergy Upstream LLC*, 342 A.3d 402, 416 (Del. Ch. 2025); *Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015). Florida requires complete domination, use of the corporate form for an improper purpose, and a causal nexus to injury. *Priskie v. Missry*, 958 So. 2d 613, 614-15 (Fla. Dist. Ct. App. 2007). Count V pleads only the factors these authorities reject—undercapitalization, disregarded formalities, common control, and intercompany balances— and all on information and belief. (Compl. ¶¶ 149-152.)

*Substantive consolidation.* That remedy "combines the assets and liabilities of two or more entities so that all the liabilities are paid from the combined assets" and "eliminates the inter-corporate liabilities of the consolidated entities." *In re Bay Circle Props., LLC*, 577 B.R. 587, 592–93 (Bankr. N.D. Ga. 2017) (applying *Eastgroup* and denying consolidation where the movant showed no substantial identity *among the debtor entities* and did not seek to consolidate the

non-debtor individual who allegedly controlled them); *accord Eastgroup Props. v. S. Motel Ass'n*, 935 F.2d 245, 248 (11th Cir. 1991) (substantive consolidation "involves the pooling of the assets and liabilities of two or more related entities," which are then "satisfied from the common pool of assets created by consolidation."). Its focus is thus "the equitable treatment of all creditors," not the imposition of individual liability that is the object of veil piercing. *In re Bull*, 528 B.R. 473, 495 (M.D. Fla. 2015) (contrasting veil piercing, which fixes "[l]iability… upon a showing of fraud or…complete control…that leads to a wrong against third parties," with substantive consolidation, which "has a narrower focus.").

The remedy therefore operates on *entities and their estates*. It is not a mechanism for imposing personal money-damages liability on individual officers or directors. The Debtors' consolidation "for administrative purposes" (Compl. ¶ 156) neither substantively consolidates the estates nor supplies a basis for individual liability. To the extent Count V reaches non-debtor entities, a bankruptcy court lacks authority to substantively consolidate them: "neither the Bankruptcy Code nor any other legal authority allows for the substantive consolidation of non-debtor entities with bankrupt parties," because doing so would "circumvent[] the stringent procedures and protections relating to involuntary bankruptcy cases imposed by § 303." *See In re Pearlman*, 462 B.R. 849, 851, 854–55 (Bankr. M.D. Fla. 2012). Count V should be dismissed.

**I. <u>The Complaint Pleads Insolvency Only for the Consolidated Enterprise, Not Any Entity</u>.**

The creditor-duty theory, the distribution claims, the tolling allegations, and the entity-level damages all require insolvency of a particular entity at a particular time. Yet the Complaint pleads insolvency only in the aggregate, on consolidated deficits and a going-concern opinion addressed to the consolidated enterprise. (Compl. ¶¶ 47, 116, 137.) A plaintiff must "plead facts supporting an inference that the corporation was in fact insolvent at the relevant time," and *Trenwick* was dismissed for pleading none as of any challenged transaction. 906 A.2d at 195. A consolidated deficit says nothing about whether any given DivestCo Facility Debtor or distributing entity was insolvent when a specific transfer or distribution occurred. This defect independently defeats every theory that turns on entity-level insolvency.

**J. <u>The Oldest Claims Are Time-Barred, and the Pleaded Tolling Doctrines Do Not Save Them</u>.**

Florida's limitations period for breach of fiduciary duty is four years, and the delayed-discovery doctrine does not apply to such claims. *Patten v. Winderman*, 965 So. 2d 1222, 1224-25 (Fla. Dist. Ct. App. 2007). Section 108(a) gave the Trustee two years from the June 2024 orders for relief but preserves only what was alive at the petition date; it extends limitations periods that had "not expired before the date of the filing of the petition" and does not revive a claim already barred. *In re Phoenix Diversified Inv. Corp.*, 439 B.R. 231, 244 (Bankr. S.D. Fla. 2010). The Conintlo loan

was executed in August 2018; a claim challenging its approval accrued then and expired in August 2022, well before the petition (Compl. ¶¶ 92-95, 143). Recasting the theory around the loan's December 2020 satisfaction fails because repaying a matured obligation is not pled as a breach by any identified, insolvent entity. The 2020-2021 distribution claims' statutory limits likewise expired pre-petition, as explained in Section IV.F. The tolling theories cannot close the gap.

*Adverse domination.* Florida does not recognize this concept: the tolling statute is exclusive and adverse domination "is not among those tolling circumstances." *In re Se. Banking Corp.*, 855 F. Supp. 353, 358 (S.D. Fla. 1994); *see Resolution Tr. Corp. v. Artley*, 28 F.3d 1099, 1102 (11th Cir. 1994) (tolling is a question of state law). Even where recognized, it requires domination so complete no disinterested decision-maker could sue, yet the FC21 boards pled rotated through materially different configurations. (Compl. ¶¶ 17, 120, 136.)

*Discovery rule.* Florida confines delayed accrual to enumerated categories not including breach of fiduciary duty. *Davis v. Monahan*, 832 So. 2d 708, 709-10 (Fla. 2002).

*Fraudulent concealment.* It must be pled with particularity and an affirmative act of concealment; "[s]imply alleging that a defendant engaged in fraudulent concealment is insufficient." *Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1215 (Del. Ch. 2022). The Complaint offers only generalized assertions, while

the transactions appeared in corporate records and financial statements. The time-barred claims should therefore be dismissed.

**K. <u>The Complaint's Damages Theories Are Legally Deficient.</u>**

Even if a claim survived, its damages and relief theories could not. Policy limits measure available coverage, not injury, and the Complaint pleads no non-speculative causal chain from any Defendant's conduct to any quantified, entity-specific loss: its valuation figures are expressly "preliminary," portfolio-wide ranges spanning roughly $195 million; are not allocated to any transferring entity; and do not net the assumed liabilities, lease defaults, cure costs, or regulatory exposure that accompanied each transfer. (Compl. ¶¶ 90, 123.)

To the extent Counts I and II purport to measure harm by how much deeper the conduct drove the Debtors into insolvency, Delaware rejects the theory by name: "Delaware law does not recognize this catchy term as a cause of action," no more cognizable than "a cause of action for 'shallowing profitability' would be when a firm is solvent." *Trenwick*, 906 A.2d at 174, 204-05.

Separately, the demands for punitive damages and personal disgorgement cannot be reconciled with the Trustee's own recovery limitation: the assignment caps recovery at available policy limits and permits it to be "pursued only against any applicable insurers" (Plan § H, Assignment of D&O Claims), while punitive damages and disgorgement of the individuals' own profits are, by definition, neither

insurer-paid nor within policy limits. Those demands should be stricken, and in all events they are wholly derivative of the underlying claims and fall with them.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint. Dismissal should be with prejudice as to the claims barred by jurisdictional and standing defects, the claims that fall outside the Trustee's assignment, the time-barred claims, Count III, Count V, and the legally unavailable damages and remedies. To the extent the Court concludes that any pleading defect might be curable, Defendants respectfully request that any leave to amend be limited to requiring the Trustee to plead, on a defendant-by-defendant and entity-by-entity basis, the duty allegedly owed, the challenged transaction or omission, the facts showing breach, causation, and the entity-specific injury alleged.

Respectfully submitted this 8th day of September, 2026.

**FREEMAN MATHIS & GARY, LLP**

/s/ Jill R. Dunn
Jill R. Dunn
Georgia Bar No. 602155
JDunn@fmglaw.com
Steven D. Ginsburg
Georgia Bar No. 121055
steven.ginsburg@fmglaw.com
Nicholas A. Bacon
Georgia Bar No. 502192
nicholas.bacon@fmglaw.com
*Counsel for Defendants*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
Telephone: (770) 818-0000

## CERTIFICATE OF COMPLIANCE

Pursuant to BLR 1001-3 and LR 7.1(D), I certify that this brief complies with the type-volume limitation and formatting requirements set forth in the Local Rules. This document has been prepared in Times New Roman, 14-point font.

/s/ Jill R. Dunn
Jill R. Dunn
Georgia Bar No. 602155

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September, 2026, I caused a true and correct copy of the foregoing Motion to Dismiss the Adversary Complaint and Memorandum of Law in Support to be served via the Court's CM/ECF system, which will send electronic notification of such filing to all counsel of record, including counsel for the GUC Trustee.

/s/ Jill R. Dunn
Jill R. Dunn
Georgia Bar No. 602155

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T: (770) 818-0000
F: (770) 937-9960
jdunn@fmglaw.com
steven.ginsburg@fmglaw.com
nicholas.bacon@fmglaw.com